UNITED STATES DISTRICT COURT
NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

          **Plaintiff,**

      **v.**

DONALD V. WATKINS SR., ESQ.,
MASADA RESOURCE GROUP,
LLC,

          **Defendants,**

Civil Action No.
1:16-CV-03298-SCJ


JURY TRIAL DEMANDED

## <u>AMENDED COMPLAINT</u>

Because the Court has granted partial summary judgment to the Commission on several claims in the original Complaint in this action, the Plaintiff Securities and Exchange Commission ("SEC" or "Commission") has decided that it is not worth the resources of the Court or the Commission to have a jury trial on the remaining claims.  Accordingly, the Commission files this Amended Complaint that eliminates the claims as to which summary judgment was not granted and alleges as follows:

1

## OVERVIEW

1.      Between at least 2010 and 2014, Defendants Donald V. Watkins Sr., Esq. ("Watkins") and his companies, Watkins Pencor, LLC ("Watkins Pencor") and Defendant Masada Resource Group, LLC ("Masada"), fraudulently raised more than $2 million in promissory note investments relating to Watkins Pencor and Masada's waste-to-energy conversion ventures ("Masada Ventures").

2.      When offering the promissory notes, Defendants misrepresented, among other things, that the investor money would be used to fund Masada and the Masada Ventures.

3.      In truth, Defendants used significant portions of the investor funds to pay off Watkins' personal expenses and non-Masada debts and expenses.

4.      Through their conduct, Defendants, directly or indirectly, engaged in acts, practices, and courses of business which constituted violations of Sections 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

5.      The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the

Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)], to enjoin the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and transactions, acts, practices, and courses of business of similar purport and object, for disgorgement and prejudgment interest, civil penalties and for other equitable relief.

6.     This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

7.     Defendants and Relief Defendant, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

8.     Venue lies in this Court because Defendant Watkins was a resident of this District between at least 2010 through 2014, and a number of the transactions, acts, practices, and courses of business constituting violations of federal securities laws occurred in this District.   For example, a number of the investors and prospective investors resided or worked within this District during that time period.

## DEFENDANTS

9.      Since 2003 until at least 2014, Defendant Watkins resided in the Atlanta, Georgia area.  Watkins has held the position of Chairman and CEO of Masada since 2005 and is the sole owner of Watkins Pencor.  Watkins received his law degree from the University of Alabama School of Law in 1973, and is a member of the Alabama bar.  Watkins was also a member of the Washington, D.C. bar, but was suspended for non-payment of dues.

10.     Defendant Masada is an Alabama limited liability company which lists its principal address in Birmingham, Alabama.  Masada is a company that purportedly owns certain patents for technology that supposedly converts organic waste to fuel.  Since at least approximately 2009, Watkins Pencor, Masada and its affiliated companies ("the Masada Affiliates") have purportedly been involved in various waste-to-energy conversion ventures both in the United States and internationally ("Masada Ventures").

11.     Since at least approximately 2009, Watkins has purported to be the majority owner and the manager of Masada and the Masada Affiliates through his ownership of an intermediate entity, Pencor Orange Corp., which is itself owned by Watkins Pencor.  As a result, Watkins managed and controlled Masada, the Masada Affiliates and the Masada Ventures for all times relevant to this action.

## FACTS

## Defendants' Background

12.     Masada has been in existence for decades.  It was started by a friend of Watkins and was initially in the business of establishing and selling infrastructure in cable, cellular communications, and electronic home security.  It later moved into the waste-to-energy arena, attempting to capitalize on technology patents it supposedly owns relating to the conversion of waste to energy.

13.     In or about December 2005, Watkins became the Chairman and CEO of Masada and subsequently entered into two agreements in order to own 100% of Masada.

14.     In or around 2005, Watkins began steering the business toward developing an international waste management business.  This included attempts to establish relationships and engage in international outreach with respect to waste-management markets, and to capitalize on the intellectual property held by Masada.  As of the end of 2014, Watkins claimed that Masada had "a market reach" in 47 countries.

15.     Defendants also purportedly engaged, at least for some period of time, several engineers and professionals in an effort to move Masada's business forward.

16.     In or about 2009, Watkins purportedly sought to purchase a majority interest in a National Football League franchise.  Watkins touted this effort in speaking to investors of Watkins Pencor and Masada.

17.     Beginning as of at least 2009, Watkins began having difficulty meeting substantial personal and non-Masada debt obligations — which included hundreds of thousands of dollars in annual payment obligations owed to financial institutions and approximately $100,000 per year in annual alimony obligations. Indeed, he reported to at least one bank that, for 2009, he had total income of approximately $300,000, but debt and payment obligations that year — unrelated to Masada — of over $1.35 million dollars.

18.     In addition to the foregoing obligations, as early as 2009, Watkins and or his law firm, Watkins PC, also incurred or were obligated to pay other substantial obligations, including but not limited to: (a) hundreds of thousands of dollars for Watkins' personal tax liabilities; (b) hundreds of thousands of dollars to attorneys defending Watkins in a 2008 lawsuit arising from his ownership in TradeWinds Airline, Inc., an aviation cargo business ("the TradeWinds Litigation"); (c) hundreds of thousands of dollars in refund payments to a legal client; and (d) tens of thousands of dollars per month in credit card bills.

19.    In 2011, Watkins defaulted on approximately $2.75 million of debt that he owed in connection with his partial ownership of a Birmingham-based bank Alamerica Bank, Inc. and its holding company, Alamerica Bancorp, Inc.

20.    In an effort to obtain funds to cover his financial problems, and to persuade certain existing investors into renewing their investments, Watkins made a variety of misrepresentations about the Masada promissory note investments.

### Defendants' Fraudulent Offering of <br> Promissory Notes

21.    Beginning in at least 2010 and continuing through 2014, Watkins raised money for Masada from investors, in part, through the sale of  promissory notes.

22.     Watkins raised more than $2 million from the issuance of promissory notes to a former NBA player between 2010 and 2014.

23.    The investor received two–page promissory notes, which Watkins signed "for Masada Resource Group, LLC" as its "CEO and President." The notes not only promised both a return of principal and interest, but also, provided to the investors a fixed percentage of the "economic interests" relating to Masada and its affiliates.

24.    The notes expressly specified that the proceeds from the notes were "solely for business purposes related to Masada Resource Group, LLC."

**Defendants Divert and Misuse the Investor's Money**

25.     Defendants had the investment proceeds wired or deposited directly into the bank account of DonaldWatkins, PC, which was controlled by Defendant Watkins.

26.     Contrary to Defendants' representations to the investor, however, Watkins used the investor's funds to pay his personal and non-Masada expenses, as well as to refund an earlier investor's money.

27.     On or about May 14, 2010, the NBA investor invested $1 million in Masada through a promissory note.

28.     That note specifically stated that the "debt evidenced by this Note was made and transacted solely for business purposes related to Masada Resource Group, LLC."   However, Defendants used a significant amount of the NBA Investor's funds for purposes other than Masada business purposes.

29.     On May 13, 2010, prior to receipt of the NBA Investor's funds, Watkins, PC had a total of $4,623.19 in its bank account.

30.     Following the wiring of the $1 million investment by the NBA Investor into the Watkins, PC bank account, Watkins used the funds for the

8

following:  (a) $750,000 to an earlier investor who wanted a refund of his Masada

investment; and (b) $41,491.14 to Cessna Finance Corp. for his personal airplane.

31.    For example, in May 2011, Watkins contacted the NBA Investor  —

who had previously invested $1 million in May 2010 via a promissory note —

seeking to: (a) renew and extend the earlier May 2010 promissory note, and (b) ask

for another $1 million investment loan.

32.    Specifically, on May 12, 2011, Watkins asked the NBA Investor to

renew his May 2010 promissory note, representing, among other things that:  (a)

Masada was engaging in confidential acquisition discussions with Waste

Management,  (b) "extensive due diligence" had already begun "in earnest" with

respect to that acquisition, (c) the acquisition transaction was expected to close

before the end of the 4th quarter of the year, (d) the promissory note would be

repaid with the proceeds from the Waste Management Acquisition, and (e)  Waste

Management "will probably acquire all of Masada's US assets and take an option

on the company's international assets.  We are seeking an all-cash exit deal."

33.    By email to the NBA Investor the next day on May 13, 2011, Watkins

sought a second $1 million investment, stating:

> As we gear up for the anticipated Masada-Waste Management
> transaction, **we will be expending significant sums of money on NY,
> San Francisco, and Atlanta investment bankers and lawyers.**  I

had planned on borrowing $1 million for this special purpose from one of my commercial bankers later today or Monday. We will be repaying the loan at the closing of the WM transaction. If you are interested in lending the money instead, we will borrow the $1 million from you at the same 10% per annum interest rate we are paying on your current loan . . . We will retire this special purpose loan at the closing of the WM transaction or within 12 months, whichever comes first. (emphasis added).

34.    The NBA Investor agreed both to "renew" the 2010 promissory note, plus invest an additional $1 million with Defendants via a second promissory note.

35.    In that second May 2011 promissory note for the new $1 million investment, the maturity date for the new investment was expressly based "upon closing of a confidential contemplated acquisition transaction between [Waste Management] and Masada Resource Group, LLC or May 18, 2012, whichever occurs first."

36.    The second promissory note — which Watkins signed "for Masada Resource Group, LLC" as "CEO and President" — also expressly provided that it was "made and transacted solely for business purposes related to Masada Resource Group, LLC and affiliated entities/persons."

37.    Contrary to his representations, Watkins did not use the NBA Investor's funds that were wired to the Watkins PC bank for "investment bankers or lawyers" for the purported Waste Management Acquisition.

38.    On May 20, 2011, before the receipt of the aforementioned second $1 million investment from the NBA Investor, the Watkins PC bank account contained a negative balance of -$786.67.

39.    Following the wiring of that $1 million investment on May 23, 2011 into the Watkins PC bank account, Watkins disbursed the NBA Investor's money for, among other things, the following:  (a) $150,000 to  attorneys defending him in the TradeWinds Litigation; (b) $90,049.32 to pay American Express credit card bills; (c) $50,000 to his former wife for "partial alimony;" (d) $41,816 to his then-girlfriend for their "House Account;" and (e) $255,703 to the U.S. Treasury for his personal tax obligations.

40.    In May 2012, Watkins again asked the NBA Investor to renew his May 2010 and May 2011 promissory notes, for an additional 12 months or upon the completed acquisition by Waste Management, Inc., at an interest rate of 10 percent per annum.

41.    In soliciting these renewals, Watkins represented that the Waste Management Acquisition was "currently in the due diligence phase" of the transaction and that he expected it to close in the 3rd or 4th quarter of that year. The NBA Investor agreed to the renewals of his investments.

## COUNT I—FRAUD

**Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]
(Against Defendants Watkins, Watkins Pencor and Masada)**

42.     Paragraphs 1 through 41 are hereby realleged and incorporated herein by reference.

43.     By their conduct, Defendants, in the offer and sale of the securities described herein by the use of the means and instruments of transportation and communication in interstate commerce or by use of the mails, directly or indirectly, employed devices, schemes, and artifices to defraud, all as more particularly described above.

44.     In engaging in such conduct, Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with severely reckless disregard for the truth.

45.     By reason of the foregoing, Defendants, directly or indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

**Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act
[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]
(Against Defendants Watkins, Watkins Pencor and Masada)**

46.     Paragraphs 1 through 41 are hereby realleged and incorporated herein by reference.

47.     By their conduct, Defendants, in the offer and sale of the securities described herein, by the use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

       a.     obtained money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

       b.     engaged in transactions, practices, and courses of business that would operate and did operate as a fraud or deceit upon the purchasers of such securities.

48.     In engaging in such conduct, Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with reckless disregard for the truth, and/or negligently engaged in the conduct described above.

49.     By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

## COUNT III—FRAUD

**Violations of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder
[17 C.F.R. § 240.10b-5]
(Against Defendants Watkins, Watkins Pencor and Masada)**

50.    Paragraphs 1 through 41 are hereby realleged and incorporated herein by reference.

51.    Defendants, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce or by use of the mails, directly and indirectly:

        a.    employed devices, schemes, and artifices to defraud;

        b.    made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

        c.    engaged in acts, practices, and courses of business that operated or would operate as a fraud and deceit upon the purchasers or holders of such securities.

52.    In engaging in such conduct, Defendants acted with scienter, that is, with an intent to deceive, manipulate, or defraud or with a severely reckless disregard for the truth.

14

53.     By reason of the foregoing, Defendants, directly or indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5thereunder [17 C.F.R. 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays that the Court:

### I.

Make findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### II.

Issue a permanent injunction enjoining Defendants, directly or indirectly, and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, and each of them:

A.     from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], and

B.     from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

### III.

Issue an Order requiring Defendants to disgorge, on a joint and several basis, all ill-gotten gains obtained as a result of the conduct alleged in this Amended Complaint, plus pay prejudgment interest thereon.

### IV.

Issue an Order, pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, imposing civil monetary penalties.

### V.

Issue an Order that retains jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may have been entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

RESPECTFULLY SUBMITTED,

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov


/s/ Joshua A, Mayes
Joshua A. Mayes
Senior Trial Counsel
Georgia Bar No, 143107
mayesj@sec.gov

Paul Kim
Senior Trial Counsel
Georgia Bar No. 418841
kimpau@sec.gov


COUNSEL FOR PLAINTIFF
U.S. SECURITIES AND EXCHANGE COMMISSION
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, Georgia 30326
B: (404) 842-7600
F: (404 842-7679